At this time we'll hear United States v. Bell. Good morning. May it please the court, my name is Paul Silver. I appear on behalf of the United States v. Bell. And we ask that this court reverse the decision below finding that there was not reasonable suspicion for the police to stop Mr. Bell and uh... therefore... We lost in state court, you lost in the government lost in state court and lost before Judge Hurd on this very same point, correct? On the very same point uh... yes in state court the test is a little different uh... and I am I did not study the state test but my understanding is at least the reason whether or not there's reasonable suspicion under state law is measured from the time of pursuit or the command to stop so there's a very significant difference under state law so what is the uh... uh... it seemed to me that maybe your best argument is that Judge Hurd seems to take this more from the perspective of of the defendant than of the government officers uh... and the question is what could the governor or government what could the police police officers have reasonably believed uh... as this thing unfolded uh... I take it that that's your position that that is one of the most significant uh... errors that we maintain Judge Hurd. You don't know much about apparently they they were they were in plain clothes but wearing a police some sort of police insignia uh... and they weren't in a marked car that is correct correct yes so do we know anything about that as in the record at all about what this police marking on their clothing was said was it just a little thing like sort of a Nike logo or was it a great big uh... sign do we know anything about that all we know are that the all three officers wore vests and that they were marked police now isn't that a contested fact though and there wasn't a hearing to resolve that uh... as I read the record it seemed as if uh... the government was asserting that the word police was prominently marked on the vest but that there was that that was contested as to whether or not uh... the defendant would have or could have seen so that seems as if it would be something that should have been resolved at a hearing well there's no dispute that the vest indicated police uh... i agree with your honor that there's nothing in the record or finding by the district court whether the word police was prominently displayed uh... well isn't that that's important not so much from what the defendant may have seen or not seen but what the police could reasonably have expected the defendant to have seen uh... and uh... so I mean it is I guess it is possible that if the three officers are wearing police that they would expect that he would have seen that under the circumstances that would also have to do with the lighting to a certain degree you know the whole purpose the problem is that if they thought if they could reasonably believe that he just thought it was there were a couple of thugs coming up and and uh... trying to rip them off or to interfere uh... then then that would be different than the circumstances that actually pertained it would be different and I would maintain that there was still reasonable suspicion to affect the stop what was that I mean why don't you spell that out before I do and I will very shortly I just want to say that one of the other errors that the district court made in addition to failing to view the circumstances through the eyes of the police is to acknowledge that a series of innocent acts even in and of themselves when viewed through the eyes of the police can constitute reasonable suspicion so the police find Mr. Bell in a conceitedly high crime area approach a car that is stopped in the middle of an intersection and place his hands inside the car uh... I didn't say in my brief but reviewing the record it says repeatedly I don't know if that really makes a difference at that point the police already suspect that this could be a hand-to-hand drug transaction but they don't stop Mr. Bell and the occupant of the car at that time was reasonable suspicion in your view had it attached at that moment in other words you've got high crime area stopped vehicle reaching hands into the car and experience that suggestive of a drug transaction are you done or do you have to actually get to the next step well I think I would say that's probably enough but it's thin it may not be there was more there is more so Mr. Bell according to the police interpretation of what occurs directs the car to a side street it's at that time that the police follow that car in essence to the side street when the police arrive they observe Mr. Bell and the driver of the car outside of the car in their words huddled and looking at something in someone's hands with their heads down looking at their hands that I think your honor adds a lot to their original suspicion even before you get to the question of flight I would say that that is enough for the police to affect the Terry stop so whether or not the word police was on the vest or not would be irrelevant under that I would say that yes but I then at that point presumably uh... the defendant Bell sees sees these people and uh... and then starts walking away happily and the police one officer gets out of the car and commands him to stop and just says stop and that's when Mr. Bell takes off running he subsequently tackled that's when under federal law the seizure occurs when Mr. Bell is handcuffed and lifted from the ground the pistol falls out of his sweatshirt these are so fact intensive but the principles are so well known and I think well it is fact intensive you're supposed to consider all of the relevant circumstances and our review is deferential is it not no your honor uh... in terms of finding the facts of what happened yes a fact yes except in this case judge Hurd was going upon a record uh... in the state court proceeding correct I think I think stipulated set of facts I think judge Hurd took into account the uh... record of the state court proceeding as well as the affidavits that were submitted uh... in support of and in opposition to the motion to suppress he did conduct a hearing on an issue that's not before the court relates to a later statement but he he determined that no further hearing was necessary and the government  honor uh... I'll speak to you again in rebuttal yes thank you your honor good morning may it please the court my name is Melissa Tui I'm with the office of the federal public defender appearing today on behalf of Charles Bell it's our position that this court should affirm the district court's well-reasoned suppression order that was based on undisputed facts that came from the government's own witnesses that there was not reasonable suspicion to seize Mr. Bell as the district court correctly noted at the time that the officers decided to initiate the Terry stop they had observed nothing more than a black male in a hooded sweatshirt approach a vehicle stopped in the intersection this all happened he also reached into the car right so you've got hands reaching into the car correct however and then the car being directed to a to a more discreet location than the middle of a intersection well as I stated in my brief that um... the car was in the intersection and it looks like Mr. Bell was actively getting the driver to move to a safer location on the side of the road rather than being in the I thought it was a side street I thought it was a different road I may be mistaken on that it was stopped in the intersection and then it pulled off to the in part legally on the side road oh I see on the same road yes and so on the side of the same road or onto a side road onto a side road I'm sorry a side road yeah so um that creates an inference of concealment or perhaps a desire to to you know to move to a more secluded area which would add to the suspicion well I think that first of all I mean they're saying that they witnessed him approach the car and put his hands in the car and as Judge Hurd noted it was dark and they couldn't make out anything in his hands What did the police do that was wrong here from your perspective? they acted on a hunch that it was an assumption they said that they believe there was some possible illegal activity possibly a drug transaction but apart from that it's not as though they did anything that would give him a cause of action under section 1983 or violate his constitutional rights except that from your perspective he was stopped based upon what you believe was insufficient probable reasonable suspicion yes what I'm wondering is why would we want to suppress this evidence anyway I mean what is there what are we sanctioning in that that the police has done here why would this be a sanction to the police that would warrant suppression because I'm like I'm thinking about the case Streif and Herring in those cases yes correct because first of all it's two people conversing on a public street at night they're lawfully allowed in a high-crime area at night it's not often that you get conversations like that that are presumably blocking traffic and and that kind of thing or could be blocking traffic right but they did move out of the intersection to stop blocking traffic and you can talk to people on a public street it's a high-crime areas are filled with people that live there that conduct business 845 p.m. at night is not an unreasonable hour to know whether it's a residential area or an industrial area that is commonly used for that wasn't developed in the wreck that was not developed in the record do you think that if the word police had been prominently displayed on the vest and in the face of the police approaching the flight had occurred if that fact was established in the record would it change your view as to whether or not there was reasonable suspicion it would not because there's well there's nothing in the record to support that Mr. Bell saw that that there was lighting important if the police believe that he's be because I'm in order under Wardlow in Muhammad in order for the flight to be a significant part of the reasonable suspicion analysis it has to be unprovoked and at in a reaction to noticed police presence which we don't have here what we're really we should be looking at and this is one of the problems I thought judge her we should be looking at through the lens the police's perceptions not the defendants right so looking at it from the a reasonable police officer with this their training in its experience each having eight or nine years of experience they're acting on a a hunch they don't have specific facts about a drug transaction occurring they don't see anything in the hands when they come up to the vehicle they don't activate their police lights or sirens they don't and now because they're not there can't tell is it's not like they were looking at the hands and they were empty I from their perspective they just know they so we're not talking about probable cause here we're talking about suspicion but there still has to be something that they can point to I think all of the cases do you think it was where they might have suggested that maybe they were looking at family pictures I a sharing that and and talking to each other about their family situation or something else I mean this be realistic this is a a a a high crime area this is a situation where these officers with their nine years of experience each have have seen lots of drug transactions which are normally hand-to-hand why wouldn't that be a pretty indicative of of what was going on to them because I think that when you look at the case laws a developing sense Terry I'm specifically this is very similar to Brown versus Texas where the police observed two people walking in an alleyway and they decided based upon that that was suspicious and although it was a high crime area the court said it's not unusual for people to be walking up in an alley you walked in that alley and they opt and saw another person in the alley who had a bag and then they reached into the bag in the alley and then a motion to that person to go to a side alley where they went to the side alley and then they all stood around the bag looking into the bag does that change your view as to whether or not that would have because that's more analogous to what we've got here. I respectfully disagree because I still don't think we have all of those facts all we have are like hands in a car that doesn't mean anything because there's not a bag there's not money being exchanged there's not anything else that they specifically. They didn't do the stop at that point. Right correct and they followed and when they followed nothing else came to the forefront to raise their suspicion. They're out of the car but their backs again are to them so again they're making an assumption that they're inspecting something in their hands they can't again can't see their hands they're only looking at their backs. Isn't there room for assumptions when you're talking about reasonable suspicion? No I don't think so your honor and in fact in Singletary It sounds to me like you're insisting that they actually see the transaction itself. They have they have to have something. That's probable cause then they make the arrest on that basis that's a different story. Well there's a difference between like starting from an intuition. In Singletary they go in more to talk about a hunch and intuition forming into reasonable suspicion and because of their experience maybe they did have intuition but that doesn't satisfy the fourth amendment standard to allow this detention so that because they can't say anything else and again this all occurred in under a minute I mean the observation of the intersection was 30 to 45 seconds and Detective Cattell said when they came up it was five seconds after Detective Abraham exited the car and the reason I'm saying suppression is warranted here because this is a case where the police didn't operate properly. You said earlier that the test is whether Mr. Bell saw that they were police before running but surely the test is whether the police had reason to believe that Mr. Bell thought he saw police before he began to run and you know you have these, I mean the sign that says police it's not a little tag that says I'm Walter and I'm your server tonight. There's a reason that they wear these things. It's so that every cop can know who every other cop is and so that they can announce their presence. But that's not what they did and we don't know about the vest, we don't know about the lighting and that has to be held against the government because they did not want the court to hold a hearing and I'm JA of the Joint Appendix 57 and their motion papers they said you have all you need you can decide it on the county court record and that's what they asked the district court judge to do and that's what he did and on that record there were not enough facts to support a reasonable suspicion that Mr. Bell was involved in criminal activity and his flight cannot be considered in the analysis because it was provoked by the actions of the police officers who failed to announce themselves who failed to display a lawful show of authority in order to... But you would agree that they were announcing themselves and making a lawful display of authority if they were wearing a vest that prominently said police on it as opposed to, you know, a miniscule type. But I don't know that because I don't know anything about the vest I don't know how displayed it was I don't know if it was reflective like we don't know that and that's because it's not in the record. Is the experience of the officers in terms of identifying drug transactions relevant to their view of reasonable suspicion? Yes. So if the officers believe that they're seeing a drug transaction and they believe that based upon a high crime area, stopped vehicle in the middle of the street, hands reaching in and that to them going off into the side street looking at something there that to them signals drug transaction based upon experience before you get to flight doesn't that together give you more than the cases that you folks have cited? Oh I don't think so I think there's less I mean and in Freeman Judge Puller talked about how factors such as high crime area and flight are just generic factors that the government has to give specificity to in order to make them fall under the reasonable suspicion area because just being in a high crime area and talking to someone should not be enough to support a detention under these circumstances. Thank you. Thank you. We will hear rebuttal. Thank you so much. Thank you Your Honors. I think the flaw with my adversary's argument is it is truncated with only the encounter, the first encounter observing Mr. Bell next to the car in the middle of the street and saying that that wasn't enough to approach Mr. Bell. Well they didn't need any standard of proof to approach Mr. Bell but when they subsequently did they also observed Mr. Bell and the driver of the car observing something in their hands. So there are those two things that if for some reason the police don't have reasonable suspicion based on seeing the hands go into the car in the middle of the street they certainly have it by the time they observe Mr. Bell and his accomplice if you will looking down in their hands. Now when you said they observed something in their hands where in the record does it say something in the hands? I thought it was just the hands reaching in. I'm sorry. It is just the hands reaching into the car. When the police subsequently see Mr. Bell on the side street they say they see him and the person he is with looking at their hands as if they are looking at something in their hands. They don't see what it is. This business of the side street, is it a right turn or a left turn or something in a different street that's perpendicular to the street that they were on originally or is it just you're pulling over behind some sort of a barricade or something like that? I don't recall if it's a right turn or a left turn. I apologize. It is a turn. It is a turn. The way I read the record it's another intersection with the street that the car was first observed stopping on. Not the perpendicular road at that intersection. It was yet another street. Because it was Maple Street and Genesee Street where they were observed in the middle of the street. It was Maple Terrace where the police later observed them outside of the car. So yet another street. Briefly I see my time. We have your arguments. We have your briefs. Thank you. Thank you very much. We will reserve decision.